**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|                         |   |                              |
|-------------------------|---|------------------------------|
|                         | : |                              |
|                         | : | **CIVIL ACTION No. 15-6385** |
| **IN RE: EARL WILSON**  | : |                              |
|                         | : |                              |
|                         | : | **(BANKRUPTCY No. 14-12720)**|
|                         | : |                              |
|                         | : |                              |

PRATTER, J.                                                    DECEMBER 27, 2016

**MEMORANDUM**

Debtor, Earl Wilson, filed a Chapter 13 bankruptcy petition in the United States

Bankruptcy Court for the Eastern District of Pennsylvania.  The City of Philadelphia ("City")

appeals the Bankruptcy Court's Order confirming Mr. Wilson's Revised Fifth Amended Chapter

13 Plan (the "Plan").  After considering the briefs and the record on appeal, the Court will

(i) affirm the Bankruptcy Court's finding that the City lacked standing to object to the provision

of the Plan permitting Mr. Wilson to pay the redemption amount over the term of the Plan and

(ii) dismiss the City's appeal of all other issues for lack of bankruptcy appellate standing.

## I.    FACTUAL AND PROCEDURAL HISTORY

Mr. Wilson owned property in Philadelphia, located at 4507 North 17th Street ("the

Property"), which was sold by the Philadelphia Sheriff's Office pursuant to the Pennsylvania

Municipal Claims and Tax Lien Act ("MCTLA") to collect unpaid real estate taxes.  Skyy

Realty, LLC (the "Purchaser") purchased the Property for $7,900 after submitting the winning

bid at a sheriff's sale.  The deed was acknowledged on February 14, 2014.  Thereafter, the

Purchaser sold the Property to Jamal and Sharon Hicks (the "Subsequent Purchasers").

Mr. Wilson filed a voluntary Chapter 13 bankruptcy on April 7, 2014.  Mr. Wilson, initially acting *pro se*, filed two Chapter 13 plans that made no mention of redeeming the Property and did not identify the Purchaser as a secured creditor.  Subsequently, however, Mr. Wilson retained counsel and filed an amended plan on September 10, 2014 that identified the Purchaser as a secured creditor and himself as the holder of a right of redemption with regard to the Property.  Mr. Wilson then filed a secured claim on behalf of the Purchaser in the amount of $3,000, which Mr. Wilson argued was the redemption amount.  The City filed three secured claims in the bankruptcy proceeding totaling $2,741.42, all of which related to a different property parcel in Philadelphia owned by Mr. Wilson.

After two amended plans were rejected by the Bankruptcy Court for reasons not relevant to this appeal, Mr. Wilson filed a Fourth Amended Plan, to which the City raised several objections.  The Bankruptcy Court held a confirmation hearing on the Fourth Amended Plan, which the City, Mr. Wilson, one of the Subsequent Purchasers, and a representative of the Purchaser attended.  At that hearing, the Bankruptcy Court determined that (i) the City had standing to object to Mr. Wilson's redemption of the Property on the basis that it did not meet the requirements of the MCTLA and (ii) the Fourth Amended Plan was not confirmable because, pursuant to state law, Mr. Wilson was not entitled to title to the Property until after he had paid the redemption amount in full.  The Bankruptcy Court determined, however, that the Bankruptcy Code allows for the redemption price to be paid over the course of the plan period.  Ultimately, the Bankruptcy Court did not confirm the Fourth Amended Plan because of concerns regarding the redemption amount and the provision providing for transfer of title upon the plan's confirmation.

Following hearings on the Fourth Amended Plan, Mr. Wilson filed a Fifth Amended Plan. The City raised two additional objections to the Fifth Amended Plan, arguing that the plan (i) contained language that purported to cause the waiver of all of the City's unfiled claims and (ii) was proposed in bad faith because it still required transfer of title to the Property upon plan confirmation and because paying the redemption amount over the life of the plan was inconsistent with Pennsylvania law.[1] The Bankruptcy Court sustained the City's objection as to the treatment of its unfiled claims finding that the claims were exempted from discharge pursuant to § 523(a)(1) of the Bankruptcy Code. The Bankruptcy Court also agreed with the City that the plan's requirement that the Property be conveyed to Mr. Wilson upon confirmation was impermissible. The Bankruptcy Court found that the MCTLA specifically requires the redemption amount be paid in full prior to re-conveyance. The Bankruptcy Court, however, denied the City's objection to the extent the City challenged Mr. Wilson's right to stretch out repayment of the redemption amount over the life of the plan.

Mr. Wilson revised the Fifth Amended Plan to account for the Bankruptcy Court's rulings. The Revised Fifth Amended Plan provided for the City's secured claims to be paid in full and also removed the ambiguous language as to the City's unfiled claims. The Bankruptcy Court confirmed the Plan over the City's objection as to the Plan's provision allowing Mr. Wilson to repay the redemption amount over the life of the Plan. Pursuant to Local Bankruptcy

---

[1]     Neither the Purchaser nor Subsequent Purchaser objected to the Fifth Amended Plan or appeared for the confirmation hearing on the Fifth Amended Plan. Accordingly, the Bankruptcy Court deemed the Purchaser and Subsequent Purchaser to have accepted the Fifth Amended Plan pursuant to a prior Order of the Bankruptcy Court. *See* October 16, 2015 Bankruptcy Court Order, Bankruptcy No. 14-12720, Doc. No. 113.

Rule 8001-1(b), the Bankruptcy Court issued a Memorandum Opinion in support of its bench ruling.

## II.   LEGAL STANDARDS

On appeal, district courts review the bankruptcy court's legal determinations *de novo*, its factual findings for clear error, and its use of discretion under the abuse of discretion standard. *In re Trans World Airlines, Inc.*, 145 F.3d 124, 131 (3d Cir. 1998).  A district court will not disturb a bankruptcy court's factual findings unless they are clearly erroneous.  *Stern v. Marshall*, 564 U.S. 462, 487 (2011) (citing Fed. R. Bankr. P. 8013).  A factual finding is clearly erroneous only if the district court is firmly convinced that a mistake was made.  *Vento v. Dir. of V.I. Bureau of Internal Revenue*, 715 F.3d 455, 468 (3d Cir. 2013) (citation omitted).  This Court has jurisdiction to review the Bankruptcy Court's decision pursuant to 28 U.S.C. §§ 158(a)(1) and 1334.

## III.   DISCUSSION

### A.   The City's Standing on Appeal

The Court must first address whether the City has standing to appeal from the Bankruptcy Court's ruling.  Article III's standing requirement mandates only that an appellant's injury be "fairly traceable to the alleged illegal action."  *In re Congoleum Corp.*, 426 F.3d 675, 685 (3d Cir. 2005).  The standing requirement in bankruptcy appeals, however, is more restrictive.

The more stringent bankruptcy appellate standing requirement rests on the "particularly acute" need to limit appeals in bankruptcy proceedings, which often involve a "myriad of parties indirectly affected by every bankruptcy court order."  *In re Combustion Eng'g, Inc.*, 391 F.3d 190, 215 (3d Cir. 2004) (quoting *Traveler's Ins. Co. v. H.K. Potter Co., Inc.*, 45 F.3d 737, 741 (3d Cir. 1995)).  For this reason, bankruptcy appellate standing is limited to "persons aggrieved"

4

by an order of the bankruptcy court. *Id.* at 214 (citing *Gen'l Motors Acceptance Corp. v. Dykes*, 10 F.3d 184, 187 (3d Cir. 1993)).   The "persons aggrieved" standard is met only by persons "whose rights or interests are 'directly and adversely affected pecuniarily'" by an order of the bankruptcy court. *Id.* (citations omitted).   The party seeking appellate standing must show the order of the bankruptcy court "diminishes their property, increases their burdens, or impairs their rights."  *In re PWS Holding Corp.*, 228 F.3d 224, 249 (3d Cir. 2000) (citation omitted).   Thus, a party who suffers only potential harm or collateral damage from a bankruptcy court order lacks bankruptcy appellate standing.  *In re Terry*, 543 B.R. 173, 178 (E.D. Pa. 2015).

The City argues that it has bankruptcy appellate standing because the Bankruptcy Court's order will deprive it of tax revenues in three ways.  First, the City argues that allowing redemption through the Plan will diminish its ability to use sheriff's sales as a means of generating revenue and putting properties back on the productive tax rolls.  Second, the City argues that confirming the Plan will increase uncertainty of ownership after a sheriff's sale which creates the possibility that fewer parties will place bids at sheriff's sales.  Third, the City argues that allowing Mr. Wilson to redeem the property without a proven readiness to pay the redemption amount puts property back into the hands of an owner with a proven inability to afford his tax obligations and without assurance that Mr. Wilson will pay taxes assessed on the Property in the future.

A party must establish more than a potential or speculative injury to its pecuniary interests in order to have standing to appeal an order of the bankruptcy court. *Traveler's*, 45 F.3d at 742 (finding a party lacked bankruptcy appellate standing because the appellant's purported injury was "at least two steps removed from any possible diminution of its property").

Here, the City has not demonstrated anything more than a potential or speculative injury contingent upon events that have not happened and may never happen.

First, the City's property was not diminished by the Plan's confirmation because the Plan provides for full payment of its secured claims and the City's unfiled claims are not subject to discharge. *See* 11 U.S.C. § 523(a)(1). Therefore, it has not suffered any direct pecuniary harm in this proceeding.

Second, any alleged injury based on a decline in tax revenue as a result of damage to the sheriff's sale process is purely speculative. As in *Traveler's*, this alleged injury is two steps removed from the Bankruptcy Court's order: fewer investors would have to participate in sheriff's sales and that participation decline would have to lead to the City selling tax delinquent properties for less than they otherwise would have.

Third, any future harm to the City's tax revenue due to non-payment by Mr. Wilson is contingent upon his failure to pay future real estate taxes. This alleged injury is based on mere speculation that Mr. Wilson will not pay real estate taxes in the future and that the Subsequent Purchaser will continue to pay real estate taxes. Accordingly, the Court determines that the City lacks bankruptcy appellate standing to challenge the Bankruptcy Court's Order confirming the Plan because it was not directly and adversely affected by the Bankruptcy Court's order. *See, e.g.*, *In re Minor*, ---B.R.---, No. 15-3562, 2016 WL 1256286, at *4 (E.D. Pa. Mar. 30, 2016) (finding the City of Philadelphia did not demonstrate an injury sufficient to confer bankruptcy appellate standing where the alleged injuries were comprised of the "Debtor failing to pay future real estate taxes" and "from investors deciding to participate in fewer city tax sales").

**B.      The City's Standing to Object to Confirmation in the Bankruptcy Court[2]**

The Court now addresses whether the Bankruptcy Court erred in finding that the City lacked standing to object to the provision of the Plan permitting payment of the redemption amount over the course of the Plan period.

Standing before a bankruptcy court is premised on § 1324 of the Bankruptcy Code, which states that, "[a] party in interest may object to confirmation of a plan." 11 U.S.C. § 1324(a). "[C]ourts must determine on a case by case basis whether the prospective party in interest has a sufficient stake in the proceeding so as to require representation." *In re Amatex Corp.*, 755 F.2d 1034, 1042 (3d Cir. 1985). The "party in interest" standard and Article III standing are "effectively coextensive." *Glob. Indus.*, 645 F.3d at 211. Accordingly, the City must meet the familiar three-part test to establish standing. First, the City must have suffered an injury in fact, which is defined as "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). Allegations of possible future injury do not satisfy the injury in fact standard. *Reilly v. Ceridian Corp.*, 664 F.3d 38, 42 (3d Cir. 2011). To allege a future harm as an injury in fact, the threatened injury must be "certainly impending" or there "must be a substantial risk that the harm will occur." *Susan B. Anthony List v. Driehaus*, 134 S. Ct. 2334, 2341 (2014). Second, the injury must be "fairly traceable to the challenged action" of the debtor and not the result of conduct of an independent third party. *Lujan*, 645 F.3d at 560. Third, it must be likely, not merely speculative, that the injury will be redressed by a favorable

---

[2]      While the Court finds that the City lacks bankruptcy appellate standing to challenge the substance of the Bankruptcy Court's decision, the City does have standing to appeal the Bankruptcy Court's determination that it lacked standing to object to certain provisions of the Revised Fifth Amended Plan. *See In re Glob. Indus. Techs., Inc.*, 645 F.3d 201, 209 n.23 (3d Cir. 2011).

decision. *Id.* at 561. The City, as the party invoking bankruptcy jurisdiction, has the burden of establishing each of these elements. *Id.*

The City's arguments as to bankruptcy standing are essentially the same as the City's appellate standing arguments—that confirmation of the Plan undermines the sheriff's sale process, and as a consequence, hinders the City's ability to collect unpaid real property taxes.

### 1. Maintaining Productive Tax Rolls

The City first argues that allowing Mr. Wilson to redeem the Property over the life of the Plan prevents it from placing the Property back on the productive tax rolls and undermines its ability to satisfy tax delinquencies. Such a scenario, according to the City, keeps the Property in the hands of an individual who has failed to pay in the past and, therefore, is likely to fail to do so again. This alleged injury, however, fails to meet the injury in fact standard because it is merely an allegation of conjectural or hypothetical future injury. It is neither actual nor imminent. Rather, the alleged injury depends on an "attenuated chain of inferences," including the assumptions that Mr. Wilson would fail to pay future real estate taxes and that the Subsequent Purchaser would pay future real estate taxes. The Court is not convinced that such an alleged injury is "certainly impending." *Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138, 1150 n.5 (2013). Nor can the City show that there is a substantial risk that it will be harmed by the potential failure of Mr. Wilson to pay future real estate taxes. *See, e.g.*, *In re Minor*, 2016 WL 1256286, at *5 ("[A] past failure to pay real estate taxes is insufficient, by itself, to create a substantial risk that [a party] will fail to pay future real estate taxes.").

### 2. Fewer Bids at Sheriff's Sales

The City next argues that allowing a debtor to stretch out paying the redemption amount over the course of a Chapter 13 plan will increase uncertainty of ownership following sheriff's

sales.  The increased uncertainty, according to the City, will ultimately lead to fewer investors bidding at sheriff's sales, which, in turn, would lead to decreased competition at the sales.  The City contends that this alleged decreased competition would result in lower bids and sale of tax delinquent properties for less money than otherwise could be gained.  Ultimately, the injury would reach its peak when, and if, bids are not adequate to satisfy delinquent tax bills emanating from the properties being sold.  This alleged "injury," however, is most accurately seen as an increased risk of future injury that is dependent on "entirely speculative, future actions of" unknown third-parties.  *See Reilly*, 664 F.3d at 42; *see also In re Minor*, 2016 WL 1256286, at *6.  Accordingly, the City has failed to allege an injury in fact as to the possibility of decreased bids at future sheriff's sales.

3.   The MCTLA's "Readiness to Pay" Requirement

Last, the City contends that the Plan, and plans like it, write the "readiness to pay requirement" out of the MCTLA by allowing debtors to avoid paying the redemption amount in a lump sum.  The City, as a future creditor of redeeming debtors, alleges that this modification will make it more likely that future redeeming debtors will fail to pay their municipal obligations, such as taxes, insurance, and other expenses associated with owning property.

The MCTLA allows an owner whose property is sold at a sheriff's sale to redeem the property "within nine months from the date of the acknowledgment of the sheriff's deed."  53 Pa. Stat. § 7293(a).  When petitioning a court to redeem property sold at a sheriff's sale, the MCTLA requires the party seeking redemption to demonstrate a "readiness to pay" the redemption amount.  53 Pa. Stat. § 7293(b).  Section 7293, however, does not require a redeeming party to pay the full redemption amount prior to the expiration of the nine-month redemption period.  *In re Terry*, 543 B.R. at 181 (citing *City of Phila. v. Chin*, 535 A.2d 110, 112 (Pa. Super. 1987);

*City of Phila. v. Taylor*, 465 A.2d 33, 35 (Pa. Super. 1983)).  All that is required is that the party seeking redemption begin the process prior to the expiration of the nine-month redemption period.[3]  *Id.*

Furthermore, even if the Bankruptcy Court did confirm a plan that side-stepped the MCTLA's "readiness to pay" requirement, the City would still fail to allege an injury sufficient to confer standing.  The City essentially argues that requiring a redeeming party to pay the full redemption amount within the nine-month redemption period makes it more likely that a redeeming party would ultimately be able to afford the municipal obligations associated with property ownership.  This argument, however, suffers from the same deficiencies as the City's previous arguments—that the alleged injury depends on an "attenuated chain of inferences." *Clapper*, 133 S. Ct. at 1150 n.5.  Any prospective injury is contingent upon the inference that a party that pays the full redemption amount within a nine-month period is more likely to stay current on municipal obligations than a party that pays the redemption amount over the life of a Chapter 13 plan.  The Court is simply not convinced that the City has demonstrated an actionable, substantial risk of future injury.  *See, e.g.*, *In re Minor*, 2016 WL 1256286, at *5.[4]

## IV.   CONCLUSION

For the forgoing reasons, the Court will (i) affirm the Bankruptcy Court's finding that the City lacked standing to object to the provision of the Revised Fifth Amended Plan permitting

---

[3]     Filing a proposed Chapter 13 plan with the bankruptcy court within the nine-month redemption period, as Mr. Wilson did here, satisfies this requirement.  *See id.*

[4]     Because the Court has determined that the City does not have bankruptcy appellate standing, it will not consider the substance of the City's challenges.  The Court notes, however, that the challenges raised by the City in this action are substantially the same as those the City raised in *In re Terry* and *In re Minor*.  In both of those cases, the court found, in dicta, that the City's substantive challenges had no merit.  *See In re Terry*, 543 B.R. at 180-82; *In re Minor*, 2016 WL 1256286, at *10-14.

10

Mr. Wilson to pay the redemption amount over the term of the Revised Fifth Amended Plan, and

(ii) dismiss the City's appeal of all other issues for lack of bankruptcy appellate standing.

*       *       *

An appropriate Order follows.

BY THE COURT:

<u>S/Gene E.K. Pratter</u>
GENE E.K. PRATTER
United States District Judge